**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CARLOS TIPAN QUISHPE,

Petitioner, 9:26-cv-01748 (BKS)

v.

DAVID VENTURELLA, in his official capacity as Acting Director of the Immigration and Customs Enforcement; MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; TODD BLANCHE, in his official capacity as Attorney General of the United States; PHILIP RHONEY, in his capacity as Acting Field Office Director, Buffalo Field Office, Immigration and Customs Enforcement,

Respondents.

---

**Appearances:**

*For Petitioner:*
Kathy E. Manley
Law Office of Kathy Manley
26 Dinmore Road
Selkirk, NY 12158

*For Respondents:*
Alexis M. Osborne
Assistant United States Attorney
United States Attorney's Office
445 Broadway, Room 218
Albany, NY 12207

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On September 15, 2026, Petitioner Carlos Tipan Quishpe, who had been arrested and detained by Immigration and Customs Enforcement ("ICE") earlier that day, filed an emergency

petition for a writ of habeas corpus under 28 U.S.C. § 2241 directing Respondents to immediately release Petitioner from custody, or, alternatively, directing that an individualized bond hearing be held. (Dkt. No. 1). Petitioner claims: (1) violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a), and its implementing regulations; (2) deprivation of due process in violation of the Fifth Amendment; (3) violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A); and (4) illegal stop and seizure in violation of the Fourth Amendment. (*Id.* ¶¶ 35–51).

The day the petition was filed, the Court issued an Order enjoining Respondents from moving Petitioner outside the jurisdiction of the Northern District of New York while this matter is pending[1] and setting a briefing schedule. (Dkt. No. 4). On October 8, 2026, after considering the parties' briefs, (Dkt. Nos. 7, 8), the Court issued a Text Order directing that Petitioner be provided a bond hearing at which Respondents would bear the burden of proof, and advised the parties that a written decision would follow. (Dkt. No. 16). This is that decision.

## II. BACKGROUND

Petitioner, a native and citizen of Ecuador, entered the United States in July 2024 at the Brownsville, Texas Port of Entry "without documents sufficient for lawful entry into the United States." (Dkt. No. 1, ¶ 6; Dkt. No. 7-1, at 2). "Petitioner was processed as an arriving alien and served on that same date with a Notice to Appear ('NTA'), placing him into removal proceedings." (Dkt. No. 7, at 1 (citing Dkt. No. 7-2, at 1)). "Petitioner was subsequently released from immigration custody" and paroled pursuant to 8 U.S.C. § 1182(d)(5)(A), "with a termination date of April 24, 2026." (*Id.* (citing Dkt. No. 7-1, at 2; Dkt. No. 7-3, at 1)). On

[1] At Respondents' request and on their representation that transfer would not affect this Court's jurisdiction, the Court subsequently modified its order to allow Petitioner's transfer to the Buffalo Federal Detention Facility in Batavia, New York, which is located in Western District of New York. (Dkt. Nos. 5, 6).

August 30, 2024, and again on February 19, 2025, Petitioner applied for, and was granted, employment authorizations. (Dkt. No. 7-4, at 3).

On July 13, 2026, an Immigration Judge issued an order denying Petitioner's application for asylum and withholding, and ordering removal. (Dkt. No. 7-5, at 3–5; Dkt. No. 1, ¶ 6). Petitioner appealed the order of removal to the Board of Immigration Appeals. (Dkt. No. 7-6, at 1). The appeal remains pending. (Dkt. No. 7, at 2; Dkt. No. 8, at 1).

According to the "Record of Deportable/Inadmissible Alien," I-213 Form, prepared by Deportation Officer Sean Wilson following Petitioner's arrest: on September 15, 2026,[2] ICE officers were "conducting surveillance . . . for an Ecuadorian national" at a "target residence" in Schenectady, New York, "when two individuals exited the residence and got into a gray . . . SUV." (Dkt. No. 7-4, at 2). The ICE officers "initiated a vehicle stop." (*Id.*). Petitioner exited the "driver door" of the vehicle and one of the ICE officers "placed hands on [Petitioner] to detain him." (*Id.*). However, as an ICE officer "ran to put the SUV" in park, Petitioner "broke free of an officer's grasp and started to flee into a wooded area." (*Id.*). ICE officers followed Petitioner into the woods and "continued to search" for Petitioner "for about 30 minutes." (*Id.*). With assistance from the local police department, ICE officers eventually located and arrested petitioner. (*Id.*). At that time, Petitioner was served with an I-200 Warrant of Arrest and transported for processing. (*Id.* at 3). Officer Wilson indicated that Petitioner had "no prior criminal arrest history" and, under "Disposition," wrote: Petitioner's "custody status has been changed from non-detained to detained, the [Petitioner's] interim parole period has expired. The [Petitioner] has failed to update his current address with [the Executive Office for Immigration Review] as required by

---

[2] The "Record of Deportable/Inadmissible Alien," states that the arrest occurred on September 14, 2026. (Dkt. No. 7-4, at 2). However, the parties both indicate that the arrest occurred on September 15, 2026. (Dkt. No. 1, ¶ 1; Dkt. No. 7, at 2).

law. The [Petitioner] should be considered a serious risk of flight due to his established behavior for fleeing law enforcement." (*Id.* at 4). Petitioner, who remains detained at the Buffalo Detention Center in Batavia, New York, (Dkt. No. 7, at 2), has not disputed any of the above.

On October 16, 2026, a bond hearing was held as directed by this Court in accordance with the above-referenced October 8, 2026, Text Order. (Dkt. No. 9; Dkt. No. 10). Bond was denied. (Dkt. No. 10). The "Order of the Immigration Judge" states that "[a]fter full consideration of the evidence presented, the [Petitioner's] request for a change in custody is . . . [d]enied, because [the Government] met their burden of proof as to danger." (Dkt. No. 10-1, at 1). The Immigration Judge's Order further states that the Immigration "Court made an alternate finding that [the Government] met their burden of proof as to flight, so much so that no amount of bond, no conditions, and no combination of bond and conditions would mitigate this Court's flight concerns." (*Id.*). Respondents maintain, and Petitioner has not contested, that in holding the bond hearing, "they have fully complied with the Court's October 8, 2026 Order." (Dkt. No. 10).

## III. JURISDICTION

"28 U.S.C. § 2241(c)(3) authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-cv-4189, 2018 WL 2932726, at *6, 2018 U.S. Dist. LEXIS 98712, at *15 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## IV. DISCUSSION

### A. Statutory Basis for Detention

Petitioner argues that the discretionary provisions in 8 U.S.C. § 1226(a) govern his detention pending removal proceedings and entitle him to release, or, at minimum, a bond hearing. (Dkt. No. 1, at ¶¶ 13–14). Respondents, on the other hand, argue that Petitioner is not entitled to any relief and "maintain that [he is] subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A)." (Dkt. 7, at 2).

In *Barbosa da Cunha v. Freden*, the Second Circuit held that § 1226(a)'s discretionary detention provisions, not the mandatory detention provisions in § 1225(b)(2)(A), govern the detention of a noncitizen already present in the United States at the time of arrest.[3] 175 F.4th 61 (2d Cir. 2026), *petition for cert. granted*, No. 26-104 (U.S. Oct. 1, 2026); *see id.* at 74 (explaining that "Section 1225(b)(2)(A) applies to those noncitizens who present themselves at a port of entry for admission, or who cross the physical border into the United States but are apprehended at the 'threshold of initial entry.'" (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020)). The Circuit therefore found that the petitioner, who had entered without admission or inspection and lived in the United States for approximately

[3] The Courts of Appeals for the First, Third, Fourth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits have also determined that mandatory detention of similarly-situated petitioners under § 1225(b)(2)(A) is unlawful. *Guerrero Orellana v. Moniz*, 188 F.4th 1, 20 (1st Cir. 2026); *Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223, at *7, 2026 U.S. App. LEXIS 26353, at *18 (3d Cir. Aug. 28, 2026); *Lopez Garcia v. Guadian*, No. 25-7044, 2026 WL 2661092, at *20, 2026 U.S. App. LEXIS 27850, at *16 (4th Cir. Sept. 10, 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 722 (6th Cir. 2026), *petition for cert. filed*, No. 25-1415 (U.S. June 22, 2026); *Cirrus Rojas v. Olson*, 183 F.4th 909, 914–15 (7th Cir. 2026); *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164–65 (9th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1250–51 (10th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1262 (11th Cir. 2026). The Courts of Appeals for the Fifth and Eighth Circuits have held that § 1225(b)(2)(A) requires mandatory detention of individuals like Petitioner. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 508 (5th Cir. 2026), *petition for cert. filed*, No. 26-43 (U.S. July 2, 2026); *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026).

twenty years at the time of arrest, was eligible for a bond hearing as his detention pending removal was governed by § 1226(a), not § 1225(b)(2)(A). *Id.* at 71.

Respondents assert that *Barbosa da Cunha* is inapplicable "where, as here, a noncitizen was apprehended at or near the time of entry, processed under § 1225(b), and subsequently released on parole under 8 U.S.C. § 1182(d)(5)(A)." (Dkt. No. 7, at 2). In support of their assertion, Respondents cite *Matter of Q. Li*, 29 I. & N. Dec. 66 (B.I.A. 2025), where the Board of Immigration Appeals held, in Respondents' words, "that a noncitizen released from detention under a grant of parole pursuant to § 1182(d)(5)(A), whose parole is later terminated, returns to custody under § 1225(b) pending completion of removal proceedings." (Dkt. No. 7, at 3 (citing *Matter of Q. Li*, 29 I. & N. Dec. at 69–70)). Respondents are correct that the petitioner in *Barbosa de Cunha*, who had entered the United States without encountering immigration officials, had not been previously paroled. However, as Respondents also "acknowledge[]," "a fair reading of the Second Circuit's decision appears to foreclose the interpretation adopted in *Q. Li* as applied to the circumstances presented here." *Id.* Indeed, district courts in the Second Circuit have repeatedly rejected this argument. *See Bernal Morales v. Joyce*, No. 26-cv-6723, 2026 WL 2445050, at *5 (S.D.N.Y. Aug. 20, 2026) ("[M]ost district courts in this Circuit to consider the question have concluded that under the construction held decisive in *Barbosa da Cunha*, § 1225(b) does not apply to noncitizens whose parole has expired and whom ICE thereafter takes into custody." (citing cases)). This Court likewise rejects the Government's argument and concludes that Petitioner's detention during removal proceedings is governed by § 1226(a).

**B. Due Process Required**

The Court next considers whether Petitioner's detention violates due process. The Due Process Clause of the Fifth Amendment prevents the Government from depriving any person of "life, liberty, or property without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This protection "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. The "essence of due process is the requirement that 'a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171–72 (1951) (Frankfurter, J., concurring)).

Habeas review is available to challenge "the lawfulness of detention when it is first imposed" as well as "to challenge whether, at some point, an ongoing detention has become unlawful." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.* at 850 (citing *Boumediene v. Bush*, 553 U.S. 723, 781–83, 786 (2008)).

In evaluating procedural due process, courts apply the "three-factor balancing test as provided in *Mathews v. Eldridge*": "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens

that the additional or substitute procedural requirement would entail.'" *Velasco Lopez*, 978 F.3d at 851 (quoting *Mathews*, 424 U.S. at 335).

**1. Petitioner's Private Interest**

"[T]he private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)), and it "cannot be abridged without 'adequate procedural protections,'" *Singh v. Maldonado*, No. 26-cv-00019, 2026 WL 233216, at *9, 2026 U.S. Dist. LEXIS 17311, at *27 (E.D.N.Y. Jan. 29, 2026) (quoting *Zadvydas*, 533 U.S. at 690). Petitioner, who, according to Respondents, has no criminal history, has been detained from September 15, 2026, to date, pursuant to the INA's civil detention provisions, and not as a "result of a criminal adjudication." *Velasco Lopez*, 978 F.3d at 851; *see also Zadvydas*, 533 U.S. at 690 (referring to immigration proceedings as "civil, not criminal"). Nonetheless, Petitioner has been housed in Buffalo Federal Detention Center, which has been described as "not meaningfully different from at least a low-security penal institution for criminal detention," *Persaud v. Ball*, No. 26-cv-00841, 2026 WL 2069859, at *3, 2026 U.S. Dist. LEXIS 159088, at *8 (W.D.N.Y. July 17, 2026) (quoting *Wilson v. Barr*, No. 19-cv-01364, 2020 WL 13554798, at *7, 2020 U.S. Dist. LEXIS 266750, at *20 (W.D.N.Y. May 1, 2020)). The Court therefore finds the first *Mathews* factor weighs heavily in Petitioner's favor.

**2. Risk of Erroneous Deprivation and Probable Value of Additional Safeguards**

The second *Mathews* factor, "the risk of an erroneous deprivation of such [private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," also weighs in Petitioner's favor. *Black v. Decker*, 103 F.4th 133, 152

(2d Cir. 2024). "The only interest to be considered at this part of the *Mathews* analysis is that of the detained individuals—not the government." *Black*, 103 F.4th at 152.

Section 1226(a) provides that "[o]n a warrant issued by the Attorney General," a noncitizen "may be arrested and detained pending a decision on whether" the noncitizen "is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Curimilma Quille v. Blanche*, No. 26-cv-2818, 2026 WL 1453889, at *5, 2026 U.S. Dist. LEXIS 114149, at *14 (E.D.N.Y. May 22, 2026) ("ICE must obtain a warrant before arresting a noncitizen unless the officer 'has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest.'" (quoting 8 U.S.C. § 1357(a)(2)). The regulations implementing § 1226(a) require an officer to make "an individualized determination as to whether detention is appropriate based on two factors—whether the noncitizen is (1) a 'danger to property or persons' and (2) is 'likely to appear for any future proceeding.'" *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 316 (E.D.N.Y. 2025) (quoting 8 C.F.R. § 1236.1(c)(8)).

Here, there is evidence that Petitioner received *some* procedure insofar as a detention officer appears to have made an individualized determination as to detention following Petitioner's arrest and concluded that detention was appropriate based on Petitioner's failure to update his current address as required by immigration law, and based on "his established behavior for fleeing law enforcement," Petitioner should be "considered a serious risk of flight." (Dkt. No. 7-4, at 4). On the other hand, the record indicates that a warrant was not issued until after Petitioner's arrest, and that Petitioner was not offered a bond hearing until after this Court ordered one, nearly a month after his detention. Thus, this factor weighs in Petitioner's favor.

### 3. Government's Interest

The third factor in the *Mathews* analysis requires the Court to consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. It is well-established that "'the Attorney General's discretion to detain individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate governmental purpose,'" and that "[t]he Government has interests in 'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community.'" *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) (first quoting *Velasco Lopez*, 978 F.3d at 854; and then quoting *Zadvydas*, 533 U.S. at 690). "'[I]n striking the appropriate due process balance the final factor to be assessed is the public interest,'" which "include 'the administrative burden and other societal costs that would be associated with' the additional process." *Velasco Lopez*, 978 F.3d at 855 (quoting *Mathews*, 424 U.S. at 347).

Here, Respondents have not articulated any public interest served through the mandatory (non-discretionary) detention, with no opportunity for a bond hearing, of a noncitizen like Petitioner, who has a work authorization and has been living in the United States for more than two years. The Court therefore concludes that Respondent's interest in Petitioner's continued detention without any available process, i.e., a bond hearing is minimal.

Accordingly, the Court finds that Respondents' "ongoing detention of Petitioner with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond, violates his due process rights," *Valdez*, 803 F. Supp. 3d at 219, and must therefore consider the appropriate remedy.

**C. Appropriate Remedy**

"Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008). However, "release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene*, 553 U.S. at 779.

Petitioner seeks immediate release, or immediate release pending a bond hearing. (Dkt. No. 1). Respondents dispute that any additional process is due absent "prolonged" detention, but state that "[a] prompt bond hearing would remedy any procedural deficiency the Court may find while preserving the Government's authority to detain Petitioner if" the burden for detention is not satisfied. (Dkt. No. 7, at 4).

Here, Petitioner had been detained less than a day at the time he filed the petition. Moreover, there is evidence that Petitioner fled during the initial encounter with ICE officers. Petitioner filed a reply in this case but did not contest the Government's recitation of the arrest. In general, noncitizens "detained under § 1226(a) receive bond hearings at the outset of detention," *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018), and the Court finds under the circumstances of this case, that a bond hearing is the appropriate remedy, *see Romero Perez v. Francis*, No. 25-cv-8112, 2025 WL 3110459, at *3, 2025 U.S. Dist. LEXIS 219356, at *9 (S.D.N.Y. Nov. 6, 2025) (ordering a bond hearing before an Immigration Judge); *Sun v. Almodovar*, No. 25-cv-9262, 2025 WL 3241268, at *3, 2025 U.S. Dist. LEXIS 230613, at *6 (S.D.N.Y. Nov. 20, 2025) (ordering "individualized bond hearing to be conducted before an Immigration Judge"). The Court further finds that due process requires that the Government bear the burden of demonstrating dangerousness or flight risk by clear and convincing evidence at any bond hearing. *Lieogo v. Freden*, No. 25-cv-06615, 2025 WL 3290694, at *5–6, 2025 U.S. Dist. LEXIS 232722, at *12–15 (W.D.N.Y. Nov. 26, 2025) (reviewing *Mathews* factors and finding,

inter alia, no evidence of individualized assessment supporting the petitioner's detention, and noting that detention was due solely to "policy change reversing decades of past practice," and ordering bond hearing and assigning burden of proving "dangerousness or flight risk by clear and convincing evidence" to the respondents); *see also Quintanilla v. Decker*, No. 21-cv-417, 2021 WL 707062, at *3, 2021 U.S. Dist. LEXIS 32633, at *9 (S.D.N.Y. Feb. 22, 2021) (joining the "overwhelming consensus of judges in this district in concluding that the Government should bear the burden to deny liberty at any Section 1226(a) bond hearing, regardless of the noncitizen's length of detention" (emphasis added)).

Accordingly, for these reasons, the Court issued the October 8, 2026 Text Order directing Respondents to provide Petitioner with a bond hearing. (Dkt. No. 9). As a bond hearing has been held, (Dkt. No. 10), this case may be closed.[4]

## V. CONCLUSION

Accordingly, it is

**ORDERED** that the Petition for a writ of habeas corpus (Dkt. No. 1) is **GRANTED**; and it is further

**ORDERED** that the Clerk is respectfully directed to enter judgment and close this case.

**IT IS SO ORDERED.**

Dated: October 30, 2026

Brenda K Sannes

Brenda K. Sannes
Chief U.S. District Judge

[4] Because the Court has found Petitioner's detention violated his due process rights and has ordered a bond hearing, the Court need not reach the other claims in his petition.